UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
AMMAYEH BENTON,

                Petitioner,

    v.

PATTY NELSON, SUPERINTENDENT,
TACONIC CORRECTIONAL FACILITY,

                Respondent.
----------------------------------------------------------------X

**DECISION AND ORDER**
14-CV-423 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

Before the Court is a *pro se* petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 by Ammayeh Benton ("Petitioner"). On June 2, 2011, Petitioner was sentenced to a term of four to twelve years imprisonment for Manslaughter in the Second Degree under New York Penal Law § 125.15(1). Dkt. 1 ("Petition Form") at 1. Petitioner seeks federal *habeas* relief on the grounds of legal insufficiency of the evidence for conviction, and denial of due process and right to a fair trial due to erroneous admission and use of evidence regarding Petitioner's sex life. *Id.* at 5-12. For the reasons that follow, Petitioner's *habeas* petition is DENIED.

## BACKGROUND

### I. Crimes and State Court Proceedings

On July 3, 2008, Petitioner was driving a car occupied by Alex McFarlane, Javier Morales, Jessica White, and James Connolly. Dkt. 1-2 ("Petition") at 2. Mr. Morales began punching Mr. McFarlane, while Petitioner allegedly screamed "that's for watching me get raped!" or "I told you not to rape me." *Id.*; Dkt. 5 ("Affidavit") at ¶ 5. Mr. McFarlane then exited the moving car in an attempt to escape and was killed when he injured his head hitting the pavement. Petition at 2-3; Affidavit at ¶ 5. Petitioner kept driving "at higher speeds and in a reckless manner." Petition at 4.

Petitioner was charged by Queens County Indictment 1598/2009 with one count of Manslaughter in the Second Degree under N.Y. Penal Law § 125.15(1), two counts of Assault in the Second Degree under N.Y. Penal Law §§ 120.05[2], [4], and one count of Conspiracy in the Sixth Degree under N.Y. Penal Law § 105.00. Affidavit at ¶ 6. The State of New York

1

withdrew the Assault in the Second Degree and Conspiracy in the Sixth Degree charges; only the charge of Manslaughter in the Second Degree was submitted to the jury. Dkt. 6-5 ("Transcript V") at PDF 65.

At trial, the prosecutor, Denise Tirino, presented a theory of the case in which Petitioner was "[a] woman scorned, ashamed. Trying to save face in front of her new boyfriend. 'Hell hath no fury like a woman scorned' . . . Well, it should be changed to 'Hell hath no fury like Ammayeh Benton scorned.'" *Id.* at PDF 46. According to Ms. Tirino, Mr. McFarlane did not rape or watch Petitioner be raped. Instead, their encounter was consensual and consisted of "debauchery where they are switching partners." *Id.* at PDF 51. Petitioner lied to Mr. Connolly, her new boyfriend, about the rape because she did not want him to think "she is some fill in the b[l]ank. There are plenty of words that apply to a woman who would do that. I'm sure you could all think of a word, but she has to tell her boyfriend, I didn't want to do it." *Id.* Ms. Tirino further argued that because Petitioner had to sustain this lie, Petitioner and Mr. Connolly agreed to have Mr. Morales, the "fall guy," attack Mr. McFarlane in a car while Petitioner kept the car moving at thirty miles per hour. *Id.* at 52, 61-62. In sum, the prosecution argued it was Petitioner's act of keeping the car moving, not Mr. Morales's attack, that actually killed Mr. McFarlane when he attempted to escape. *Id.* at 61-62.

Petitioner's trial counsel argued Petitioner had no agreement with Mr. Morales to assault Mr. McFarlane, had no knowledge that Mr. Morales was going to do so, and drove on after Mr. McFarlane exited the vehicle because she panicked and Mr. Morales shouted at her to keep driving. *Id.* at PDF 21. Petitioner's trial counsel further argued the prosecution witnesses, Mr. Morales and Ms. White, were unreliable because they contradicted themselves and each other on the point of Petitioner's guilt, and because Mr. Morales had ulterior motives in wishing to secure

2

a cooperation deal with the prosecution and in wishing to hide his drug dealing activities from the police. *Id.* at PDF 21-41.

On April 14, 2011, Petitioner was found guilty by a unanimous jury of Manslaughter in the Second Degree. *Id.* at PDF 99-101. Mr. Morales had previously pled guilty to Manslaughter in the Second Degree pursuant to a cooperation agreement, under which he testified at Petitioner's trial and was sentenced to four to twelve years' imprisonment. Affidavit at ¶ 6 n.1. On June 2, 2011, Justice Robert C. McGann sentenced Petitioner to four to twelve years' imprisonment. Dkt. 6-6 ("Transcript VI") at PDF 4-5.

Petitioner appealed to the New York Supreme Court, Appellate Division, Second Department (the "Second Department"). Petition at 14. In her appeal, Petitioner argued the evidence at was legally insufficient to convict, the prosecutor's use of details of her sex life deprived her of a fair trial, and her sentence was excessive. Petition at 14. On February 13, 2013, the Second Department denied Petitioner's appeal, holding (1) the evidence was legally sufficient to convict and conviction was not against the weight of the evidence; (2) Petitioner's objections to the prosecutor's use of details of her sex life were unpreserved for appellate review under New York Criminal Procedure Law ("N.Y. Crim. Proc. Law") § 470.05[2], and the comments were in any event fair comment on the evidence, fair response to defense counsel's summation, or else harmless as evidence of Petitioner's guilt was overwhelming; (3) Petitioner's sentence was not excessive; and (4) Petitioner's remaining contentions were meritless or constituted harmless error. *People v. Benton*, 959 N.Y.S.2d 518, 518-19 (2d Dep't 2013). Petitioner sought leave to appeal the denial to the New York Court of Appeals, which was denied on June 25, 2013. *People v. Benton*, 993 N.E.2d 1275 (N.Y. 2013).

II.     **The *Habeas* Petition**

3

Petitioner now seeks *habeas* relief on two grounds: (1) legal insufficiency of the evidence for conviction; and (2) denial of due process rights and deprivation of fair trial because of erroneous admission and improper use of evidence. Petition at 15-32. The Court considers each ground in turn.

## DISCUSSION

### I. *Habeas Corpus* Standard of Review

This Court's review of Petitioner's petition is governed by The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. The Court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that [she] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "In order to obtain relief, an individual in custody must demonstrate, *inter alia*, that [she] has: (1) exhausted [her] potential state remedies; (2) asserted[her] claims in [her] state appeals such that they are not procedurally barred from federal habeas review; and (3) satisfied the deferential standard of review set forth in [AEDPA], if [her] appeals were decided on the merits." *Edwards v. Superintendent, Southport C.F.*, 991 F. Supp. 2d 348, 365-66 (E.D.N.Y. 2013) (Chen, J.) (citing *Philbert v. Brown*, 11-CV-1805, 2012 WL 4849011, at *5 (E.D.N.Y. Oct. 11, 2012) (Garaufis, J.)).

"[H]abeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (internal quotation marks and citation omitted). As the statute instructs:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to

4

> any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The question is "not whether the state court was incorrect or erroneous in rejecting petitioner's claim, but whether it was objectively unreasonable in doing so." *Ryan v. Miller*, 303 F.3d 231, 245 (2d Cir. 2002) (citing *Sellan v. Kuhlman*, 261 F.3d 303, 315 (2d Cir. 2001)) (internal quotation marks, alterations, and emphases omitted). The petition may be granted only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Harrington*, 562 U.S. at 102.

## II. Analysis

### A. Legal Insufficiency of the Evidence

Petitioner was convicted of Manslaughter in the Second Degree pursuant to N.Y. Penal Law § 125.15(1), which states, "A person is guilty of manslaughter in the second degree when . . . [S]he recklessly causes the death of another person[.] N.Y. Penal Law § 125.15(1). Furthermore,

> [a] person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when [s]he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts recklessly with respect thereto.

N.Y. Penal Law § 15.05(3). " [F]inding that [Petitioner] acted recklessly is not enough to warrant a conviction for manslaughter. It must also be demonstrated that [her] recklessness

5

caused the death[] that occurred." *People v. Phippen*, 649 N.Y.S.2d 191, 192 (3rd Dep't 1996) (citation omitted). At trial, the prosecution bore the burden of proving beyond a reasonable doubt that Petitioner's behavior was "a *sufficiently direct cause* of the ensuing death" and the death was "a foreseeable result of [Petitioner's] recklessness"; a "possible or probable connection between [Petitioner's] wrongful acts and the ensuing death[]" would be insufficient. *Id.* (emphases in original) (internal citations and quotation marks omitted).

Petitioner argues the evidence against her was legally insufficient to convict because "the direct causation element was not [met]". Petition at 19. "The record is utterly devoid of any evidence that either [Petitioner] or Morales had any reason to anticipate that McFarlane would open the car door and jump . . . to the ground while the car was being driven." *Id.* at 15. " [T]he record discloses that when Morales began to punch him, McFarlane gave absolutely no indication that he would soon open the door and jump from the car." *Id.* at 20. Therefore, according to Petitioner, "there was no basis for concluding that [Petitioner] could have reasonably foreseen that McFarlane would react to Morales' punches by opening the door and jumping from the car[]" to his death. *Id.* at 20-21. Petitioner further argues the presence of Ms. White, who was Mr. McFarlane's girlfriend, in the backseat of the car sitting between Mr. Morales and Mr. McFarlane, made it "extremely unlikely that Morales' punches would have caused any substantial injury to McFarlane," and made it "natural to assume that McFarlane would not abandon White and leave her in the clutches of a man who had punched him for no apparent reason and a woman whose alleged desire for revenge was equally unjustified." *Id.* at 20, 21.

Petitioner is incorrect. The Court cannot find the jury and the Second Department were objectively unreasonable in applying federal law or determining the facts when they decided

6

Petitioner had every reason to believe that, if Mr. Morales assaulted Mr. McFarlane in the backseat of a moving vehicle driven by Petitioner, Mr. McFarlane would try to escape. Mr. Morales testified, and Petitioner does not deny, that Mr. Morales was a stranger to Mr. McFarlane and attacked him by surprise, while Petitioner drove the car and shouted about her alleged rape. Dkt. 6-2 ("Transcripts II") at PDF 126-130; Dkt. 6-3 ("Transcripts III") at PDF 12. It was not "objectively unreasonable," for the purposes of federal *habeas* review, for the state courts to find that the victim's risky escape was a consequence foreseeable to Petitioner, who had orchestrated a surprise attack by a stranger within the confined quarters of a moving vehicle, while shouting about an alleged rape. *See, e.g., People v. DaCosta*, 811 N.Y.S.2d 308, 311 (1st Dep't 2006) (defendant who scaled tall fence and ran onto highway to flee police officer could have reasonably foreseen, and was a sufficiently direct cause of, the officer chasing the defendant onto a highway and being killed by a car); *People v. Kern*, 545 N.Y.S.2d 4, 17-20 (2d Dep't 1989) (assailants who chased victim near the Belt Parkway while shouting racial epithets could have reasonably foreseen that victim would run onto the parkway and be killed by car, and their assault was a sufficiently direct cause of death), *aff'd* 554 N.E.2d 1235 (N.Y. 1990), *cert. denied* 498 U.S. 824 (1990). Accordingly, Petitioner's request for *habeas* relief on the basis of legal insufficiency of the evidence is hereby DENIED.

### B. Erroneous Admission of Evidence and Improper Prosecutorial Comments Thereon

Petitioner next argues she is entitled to *habeas* relief because the prosecutor, purportedly to establish Petitioner's motive to attack Mr. McFarlane, introduced Lavonnie Brown's testimony about engaging in sexual activity with Petitioner while Mr. McFarlane was present. Petition at 26-27. In addition to saying he engaged in sexual activity with Petitioner, Mr. Brown

7

testified Petitioner also engaged in sexual activity with another man at that time. *Id.* Petitioner argues the introduction of this evidence, compounded with Ms. White's testimony regarding Petitioner's unrelated sexual encounters and the prosecutor's extremely inflammatory remarks, denied Petitioner a fair trial. *Id.* at 28-32.

Petitioner does not, however, provide any argument as to why the trial court's state law evidentiary rulings regarding Mr. Brown's testimony were contrary to, or involved an unreasonable application of, clearly established federal law. Mr. Brown's testimony was relevant to the prosecution's theory of the case, in which Petitioner planned the assault on Mr. McFarlane to maintain the pretense that the sexual activity Mr. McFarlane witnessed was not consensual. There is nothing in the record to indicate that the admission of Mr. Brown's testimony violated the "fundamental fairness" of Petitioner's trial. *Estelle v. McGuire*, 112 S.Ct. 475, 482 (1991) (internal quotation marks and citation omitted). Accordingly, the Court has no basis upon which to disturb the Second Department's holding that Petitioner's challenge to the admission of that testimony was meritless or concerned harmless error. *Benton*, 959 N.Y.S.2d at 519. Furthermore, the Court cannot disturb the Second Department's holding that Petitioner's challenge based on the prosecutor's prejudicial, inflammatory remarks was procedurally barred by N.Y. Crim. Proc. Law § 470.05[2], because N.Y. Crim. Proc. Law § 470.05[2] is an independent and adequate state law ground, and Petitioner has not alleged cause and prejudice, actual innocence, or exorbitant application. *Lee v. Kemna*, 534 U.S. 362, 376 (2002); *Bowman v. Racette*, 12-CV-4153, 2015 WL 1787130, at *30 (S.D.N.Y. Apr. 20, 2015) (Swain, J.) (adopting report and recommendation of Magistrate Judge Sarah Netburn) (collecting cases where N.Y. Crim. Proc. Law § 470.05 has been deemed an independent and adequate state ground); *Benton*,

959 N.Y.S.2d at 519. Accordingly, Petitioner's request for *habeas* relief on this ground must be DENIED.

## CONCLUSION

Petitioner's application for a writ of habeas corpus is DENIED in its entirety. A certificate of appealability shall not issue. *See* 28 U.S.C. § 2253(c). The Clerk of the Court is respectfully directed to serve notice of entry of this Order on all parties and to close the case.

**SO ORDERED.**

s/WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: October 27, 2015
Brooklyn, New York